UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR18-5273 BHS |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S REVISED MOTIONS TO SUPPRESS AND FOR A *FRANKS* HEARING |
| SEAN D. SULLIVAN, | |
| Defendant. | |

This matter comes before the Court on Defendant Sean Sullivan's ("Sullivan")
revised motions to suppress, Dkt. 51, and for a *Franks* hearing, Dkt. 52. The Court has
considered the pleadings filed in support of and in opposition to the motions and the
remainder of the file and hereby denies each motion for the reasons stated herein.

## I.   FACTUAL BACKGROUND

The indictment in this case charges Sullivan with three counts: one count of
production of child pornography in violation of 18 U.S.C. § 2251(a) and (e); and two
counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and
(b)(2). Dkt. 16.

## A.    Allegations

The complaint describes the alleged minor victim of the production count as MV1; Kassandra Jeffers ("Jeffers") is MV1's mother. Dkt. 1 at 3–4. On July 24, 2017, Jeffers took MV1 to the hospital after seeing nude photographs of MV1 on Sullivan's black LG smartphone. *Id.* A nurse at the hospital notified law enforcement around 8:22 P.M., who interviewed Jeffers telephonically. *Id.*; Dkt. 56-3 (Government Ex. 4). Jeffers reported that she viewed Sullivan's phone the day before and, inside a Google file or folder labeled "trash," discovered four photos of MV1. Dkt. 1 at 4. Jeffers described the photos as two images showing MV1 nude on a white toddler bed Jeffers recognized as belonging to Sullivan, and two images showing MV1 nude next to Sullivan's erect penis. *Id.* at 4–5.

On July 25, 2017, Jeffers provided a written statement, *id.* at 4, and MV1 underwent a forensic interview. At the forensic interview, MV1 denied that anyone had taken nude photos of her or touched her private parts. *See* Dkt. 65-1. On July 25, 2017, law enforcement searched Sullivan's residence, seizing an Alcatel One Touch ("Alcatel") cell phone. Sullivan was not present at the residence during the search, and the black LG phone was never located. On July 26, 2017, law enforcement arrested Sullivan, seizing a Motorola G4 Play ("Moto G4") cell phone that Sullivan admitted possessing. Dkt. 1 at 5. During an interview with law enforcement that day, Sullivan admitted to looking at "nudist" images of naked children. Dkt. 44-2 at 8.

## B.    Warrants

A Cowlitz County District Judge issued four warrants in this case.

***Device Warrant.*** The first warrant issued on July 25, 2017. Dkt. 44-1 ("Device Warrant"). The Device Warrant authorized the search of Sullivan's home, person, car, LG smartphone, and "any other electronic or storage device" belonging to Sullivan. *Id.* Detective Cory Robinson ("Detective Robinson") of the Cowlitz County Sheriff's Office prepared the application for the device warrant. *Id.* The Device Warrant summarized the allegations in part as follows:

> " ...Jeffers said approximately two weeks ago Sullivan asked if he could take [MV1] for the day and they would be with Sullivan's roommates. Jeffers said she didn't think anything of it and let Sullivan take [MV1]. Jeffers said when [MV1] returned, she told Jeffers that they didn't go to the park or do much of anything. [Redacted] said she was later around Sullivan's roommates when they were talking about how Sullivan was making them feel weird about having their children around him. Jeffers said yesterday she started to look through Sullivan's pictures on his cell phone. Jeffers said as she was looking through his Google photos, she noticed a picture of [MV1] where her hand was behind her back and she was lifting up her shirt to expose her stomach. Jeffers said she continued to look through Sullivan's pictures and found a folder labeled "trash". Jeffers said she opened the folder and started going through the pictures. Jeffers said as she was going through the pictures, she saw two different photographs of her daughter completely nude. Jeffers said [MV1] looked like she was posing in the photographs. Jeffers said she continued going through the photographs and found four pictures of her daughter nude. Jeffers said in these pictures [MV1] was completely nude with her legs around the waist of Sullivan. Jeffers said Sullivan was also nude and had his penis on [MV1's] vagina.

Device Warrant at 6–7.

On July 27, 2017, law enforcement searched the Moto G4 phone seized from Sullivan during his arrest pursuant to the Device Warrant. The search of the Moto G4 produced evidence that six photos had been recently deleted from the folder "Google Photos/local trash." Dkt. 44-2 at 10. One image discovered on the Moto G4 appeared to be child pornography as recognized by the National Center for Missing and Exploited

Children, *id.* at 9–10, and one video downloaded to the phone and entitled "INCEST

AMATEURS – SHOCKING INCEST UPLOADED BY MEMBERS!" showed "a male

subject having intercourse with a young teenage female of unknown age," *id.* at 10. The

Moto G4 search indicated that there were "two Google accounts associated with the

device: Irishlord45@gmail.com and 4leafindustries@gmail.com." *Id.* at 9.

The Alcatel phone was also searched pursuant to the Device Warrant. There were

"no images or videos" located on the device. Dkt. 59-2 at 2. The Alcatel search indicated

the device was associated with the Google account "4Leaf Logging"

4leafindustries@gmail.com. *Id.* After reviewing the forensic image of the Alcatel phone,

Detective Robinson believed the device "ha[d] seen little day to day use." *Id.*

***Google Warrants.*** On August 1, 2017, Detective Robinson prepared affidavits

supporting search warrant applications for the Google accounts associated with the

"Irishlord45@gmail.com" and "4leafindustries@gmail.com" email addresses. *See* Dkts.

44-2 ("Irishlord45 Affidavit"), 59-1 ("4leafindustries Affidavit") (collectively "Google

Warrants"). Except for the identification of the separate Google accounts, the affidavits

supporting the Google Warrants are identical. In addition to Jeffers's allegations, the

Google Warrants relied in part on the content obtained from the search of the Moto G4

phone, as well as Sullivan's July 26, 2017 admission to viewing nudist images of

children. Irishlord45 Affidavit at 8–9; 4leafindustries Affidavit at 8–9.

Google produced content responsive to the Google Warrants. Analysis of the

"irishlord45" account discovered multiple images of MV1 with her underwear exposed

and/or as the focus of the image. *Id.* at 6–7. One image found on the "irishlord45"

account showed a "prepubescent female lying on her side on a brown and tan patterned blanket with her pubic area exposed." *Id.* at 3. The child in the image is depicted "from the neck down to her thighs" and wears "a white tank top with a sparkly butterfly" and pajama pants that have been pulled down to expose the child's pubic area. *Id.* at 6. MV1's grandmother viewed this image, identifying the butterfly shirt worn by the child in the photo as belonging to MV1. *Id.* Following the execution of the Google warrants and the discovery of the above-described content in the "irishlord45" account, Sullivan was charged in state court and released to a substance abuse treatment center.

***Blue LG Warrant.*** In November 2017, following a report of child pornography found on a cell phone confiscated at the drug treatment center Sullivan attended, affiant Detective McNeal of the Cowlitz County Sheriff's Office prepared an affidavit supporting the issuance of the fourth warrant in this case. Dkt. 45-1 ("Blue LG Warrant"). The affidavit, which quotes from a report by responding Deputy Pattinson, reads in part:

> *I went to DAPC and spoke with Amber Delagrange. Delagrange is the site manager for this location. Delagrange said Sean Sullivan entered into their treatment facility on 11-16-17. Delagrange said when each new patient is admitted, they are advised of the rules of the facility and told that their belongings can be searched at any time. Delagrange said that cell phones and other items are prohibited. Delagrange said it was brought to the attention of the staff that there was drug paraphernalia in Sullivan's room. Sullivan and his roommate were sent for UA's and their room was searched by two employees, Jason Vein and Deeanna Gilman. Delagrange said during the search a homemade pipe and a cell phone were located Delagrange said the employees opened the phone to see if they could identify who it belonged to and saw images of nude children.*
>
> *Delagrange provided me with an LG brand smartphone and said it was the one recovered from Sullivan's room. Gilman said she entered Sullivan's room to search it with Vein. Gilman said they lifted up Sullivan's*

*mattress and located a homemade smoking device and a cell phone showed Gilman the LG phone and she confirmed it was the same one they had located. Gilman said the phone was on and wasn't locked Gilman said Vein looked through the phone to try and determine who the owner was.*

*Gilman said Vein looked in the pictures to see if there was a picture of the owner and found numerous photos of nude children. Gilman said she saw several of the pictures and said the pictures were of nude females she believed to be between the ages of 11-13. Gilman said she has children and was certain that the nude females in the photos were minors. Gilman agreed to provide me with a written statement. Prior to Gilman signing the statement, I went over the perjury clause at the bottom of the form. Gilman stated she understood and signed the statement.*

Blue LG Warrant at 5.

Detective McNeal subsequently imaged and searched the LG phone confiscated from Sullivan at the drug treatment center pursuant to the Blue LG Warrant. Dkt. 1 at 7–8. "In the Google Chrome browser history of the phone, Detective McNeal saw that the search term 'little nudist girl sister' had been used." *Id.* at 8. Detective McNeal also identified two images of suspected child pornography stored on the blue LG phone. *Id.*

Sullivan was subsequently indicted by a grand jury sitting in this district on June 13, 2018. Dkt. 16. Trial is set to commence May 13, 2019. Dkt. 49.

## II. PROCEDURAL HISTORY

### A. Motion to Suppress

On April 18, 2019, Sullivan filed a revised motion to suppress challenging the breadth of each warrant issued in this case. Dkt. 51. On April 19, 2019, the Government responded and filed a motion for leave to file an overlength response. Dkts. 54, 59. On April 25, 2019, Sullivan replied. Dkt. 62.

**B.     Motion for Franks Hearing**

On April 18, 2019, Sullivan filed a revised motion for hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) ("*Franks*"). *Id.*[1] On April 19, 2019, the Government responded, Dkt. 56, filed a motion for leave to file an overlength response, Dkt. 58, moved to seal supporting exhibit 3 to its response, Dkt. 55, and filed sealed exhibit 3, Dkt. 57. On April 25, 2019, Sullivan filed a motion for leave to file an overlength reply, Dkt. 63, moved to seal his reply, Dkt. 64, and filed a sealed reply, Dkt. 65.

## III.   DISCUSSION

**A.     Motion to Suppress**

Sullivan challenges each warrant for overbreadth, assuming for purposes of the motion that probable cause supported the search and seizure of some items, but not the entirety of his electronic devices. Dkt. 51. Sullivan also contends that, "[w]ith the fruits of the first phone [Moto G4] search excised, there was no probable cause for a search of the Google account." *Id.* at 51.

The Fourth Amendment prohibits law enforcement from engaging in general exploratory searches. *United States v. Adjani*, 452 F.3d 1140, 1147–48 (9th Cir. 2006) (citations omitted). Accordingly, the scope, or breadth, of a search warrant is limited by

---

[1] Sullivan filed a previous version of the motion and supporting exhibits on April 5, 2019. Dkt. 44. On April 18, 2019, the Court granted Sullivan's unopposed motion to extend the pretrial motions deadline to file a corrected *Franks* motion, Dkt. 53, which he did that same day. However, Sullivan did not refile the exhibits supporting the corrected *Franks* motion. *See* Dkt. 52. Accordingly, the Court will consider only the revised motion found at Dkt. 52 and the supporting exhibits found at Dkt. 44-1 to 44-6.

"the probable cause on which the warrant is based." *United States v. Banks*, 556 F.3d 967, 972–73 (9th Cir. 2009) (citing *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006)). "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *Hill*, 459 F.3d at 970 (*citing Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citing *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). The Ninth Circuit has made clear that "a probable cause determination may be based in part on reasonable inferences." *Gourde*, 440 F.3d at 1071.

Courts determining whether a warrant is overbroad consider: (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available to it at the time the warrant issued. *United States v. Shi*, 525 F.3d 709, 731–32 (9th Cir. 2008) (citing *United States v. Noushfar*, 78 F.3d 1442, 1447 (9th Cir. 1996), *amended*, 140 F.3d 1244 (9th Cir. 1998)).

An affidavit providing more guidance than an overbroad warrant may cure the warrant's overbreadth if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit is either attached physically to the warrants or at least accompanies the warrant while agents execute the search. *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993). "If [the affidavit] was incorporated, then we evaluate the affidavit and the

warrant as a whole, allowing the affidavit to 'cure' any deficiencies in the naked warrant." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009).

Because the Court determines that the warrants authorizing the search of Sullivan's electronic devices and Google accounts were supported by probable cause, Sullivan's motion to suppress based on overbreadth is denied.

### 1. Device Warrant

Sullivan first challenges the Device Warrant. The Device Warrant authorized the search and seizure of the electronic and digital contents of the black LG smartphone and "any other electronic device and/or storage device belonging to Sean D. Sullivan." Device Warrant at 13. The Device Warrant then described categories of items to be searched in an illustrative list, set off by a "to include." *Id.* These categories listed examples of the types of records that may either (1) identify the user of the digital device and/or (2) contain evidence of the offenses under investigation. *Id.* Sullivan contends the Device Warrant is overbroad because "by including the entirety of the phone, the warrant authorizes the search for and seizure of items for which there was no probable cause." Dkt. 51.

The Court concludes that the Device Warrant properly authorized the seizure of the entirety of any electronic device belonging to Sullivan because there was a "fair probability" that evidence of child pornography would be found on any such device. *Hill*, 459 F.3d at 970. In reaching this conclusion, the Court places great significance on the fact that Jeffers saw the allegedly pornographic images of MV1 "as she was looking

through [Sullivan's] Google Photos." Device Affidavit at 6. As Detective Robinson explained in the affidavit supporting the Device Warrant:

> I know that google photos is a service of Google Inc which allows a smartphone user to upload photos to Google servers and access them on multiple electronic devices including smartphones. I also know that images can easily be transferred from the storage of the smartphone to other electronic devices and/or storage media. Therefore any device capable of storing images and/or connecting to the internet under Sullivan's control could contain the evidence sought in this case.

Device Warrant at 9. Because Jeffers discovered the photos stored in an application that enables users to upload images to the cloud and access them from multiple internet-enabled devices, law enforcement reasonably concluded that there was a fair probability that any other device belonging to Sullivan would access Sullivan's Google Photos account and would therefore likely contain evidence of child pornography.

The search of the entirety of the phone was also appropriate because of the sheer quantity of digital evidence relevant to the investigation of child pornography. As the Government asserts, such evidence is "vast," goes far beyond the mere application where the offending image is found, and encompasses, for example, "text messages, email communications, call logs, video files, internet searches, location history, cloud storage, and encrypted files." Dkt. 59 at 4. Evidence of user attribution—that is, evidence linking Sullivan to the ownership, access, and control of the devices—is also found in a multitude of digital records. Device Affidavit at 13. And, as Detective Robinson noted, "[i]ndividuals may go to great lengths to conceal and protect their collections of information," including efforts to "conceal collections from discovery by others." *Id.* at 4. Here, Jeffers found sexually explicit photos of MV1 in Sullivan's Google Photos,

accessed via a local folder labeled "trash." *Id.* at 7. When Jeffers attempted to obtain a copy of the photos herself, she discovered that Sullivan had recently changed the password to the Google email account through which Jeffers believed she saw the photos. *Id.* at 7–8. In the context of this investigation, there was therefore probable cause to believe that many types of information contained on Sullivan's devices would yield evidence related to a child pornography offense, and that Sullivan may have concealed this evidence in digital locations outside of the Google Photos application. Analysis of the contents of the phone was therefore necessary to determine both the circumstances under which the suspected images arrived on the phone and the attributes of the user of the device, which in turn provided probable cause to search beyond the mere images of suspected pornography themselves. Law enforcement was therefore reasonably entitled to search through Sullivan's electronic devices to determine whether they indeed contained evidence of child pornography.

Still, Sullivan argues that there was no probable cause for some of the categories of electronic data authorized for seizure by the Device Warrant, pointing out the lack of connection between the alleged crimes and, for example, records of Sullivan's electronic spreadsheets, emails, and phone calls. Dkt. 51 at 11. Sullivan illustrates this principle by analogy to a hypothetical warrant authorizing:

> [t]he seizure of 'all knives and books that are evidence of the offense.' But assume that the affidavit did not set forth probable cause that any books contain evidence of the offense. The warrant would be overbroad because, although the search of the house would be valid, the seizure of the books would not be.

Dkt. 51 at 15.

This analogy is unpersuasive because the Court upholds the issuing judge's finding of probable cause to search Sullivan's electronic devices for evidence of child pornography and/or user attribution under the instant facts. In the case of a search warrant, "[a] magistrate judge's finding of probable cause is entitled to great deference and [the] court will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause." *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994).

Addressing the categories that Sullivan highlights specifically, the Court agrees with the Government that there was probable cause to believe that information contained in Sullivan's electronic spreadsheets, emails, and phone calls had a fair probability of leading to the discovery of pornographic contraband. Regarding electronic spreadsheets, the Government points out that a suspect may copy images into a spreadsheet or change the suffix of a file path to hide the images from search. While it is true there is no indication that Sullivan concealed pornographic images in spreadsheets, Sullivan does not provide authority for the proposition that warrants authorizing the search of electronic evidence must be supported by a specific factual link to *each* digital file to be searched. Compare the situation to a warrant authorizing the physical search of a home for a small amount of methamphetamine. Law enforcement surely would be permitted to open drawers, lift mattresses, and look inside the freezer for evidence of methamphetamine, even if there was no specific indication in the affidavit that the methamphetamine would be located in any of those places. Similarly, if the Fourth Amendment does not limit a physical search for illicit drugs to a specific location inside a home, assuming the location

would plausibly contain the item sought, then neither should this Court limit an electronic search for child pornography to a specific digital location, where probable cause has been found to search the digital device or devices. This proposition is especially true given the wide variety of locations where digital files can be maintained, concealed, or stored.

The analysis is the same for Sullivan's emails and phone records, which in the factual context of this case had more than a fair probability of producing evidence of the underlying alleged child pornography offense. Jeffers reported seeing the photos through Sullivan's Google account linked to the Google email address irishlord45@gmail.com. Device Affidavit at 7, 8. Jeffers herself recognized that there was a fair probability that evidence of the photos would be found in Sullivan's Google email account when she attempted to log into Sullivan's email to obtain a copy of the photos. And, Sullivan's phone records had a "fair probability" of corroborating Jeffers's report that Sullivan was alone with MV1 approximately two weeks prior, as well as establishing a precise timeline of events. Information contained on Sullivan's electronic devices was therefore supported by probable cause and appropriately gathered as evidence of the crimes under investigation.

The Court also concludes that the Device Warrant allowed law enforcement to objectively differentiate between the items to be seized. *Shi*, 525 F.3d at 731–32. The warrant restricted law enforcement to seize only items related to sex crimes against minors and/or items that could identify Sullivan as the user of the phone. Device Warrant at 14. This was sufficient to enable the officers conducting the search to reasonably identify the items authorized to be seized. *See United States v. Brobst*, 558 F.3d 982, 993

(9th Cir. 2009). Moreover, restricting authority for a search to evidence of the crimes investigated "adequately limits the scope of the search and prevents it from being overbroad." *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000) (citing *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986)). There is a limit to this principle as illustrated in *United States v. Spilotro*, where the court examined a warrant authorizing the seizure of items limited only by a requirement "that the items seized be evidence of a violation of any one of thirteen statutes, some of exceptional scope." 800 F.2d 959, 965 (9th Cir. 1986). However, unlike in *Spilotro*, in this case law enforcement could easily distinguish whether an email, browser search, or image contained evidence of a violation of statutes prohibiting child pornography and/or child exploitation, and therefore should be seized. The warrant therefore allowed law enforcement to objectively differentiate between the items to be seized.

Third, the Court considers whether law enforcement could have described the items to be seized more particularly in light of the information available at the time the warrant issued. *Shi*, 525 F.3d at 732. "Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *Spilotro*, 800 F.2d at 963. Here, given the vast amount of information stored on modern smartphones, it was reasonable for law enforcement to provide examples of the types of information to be seized, rather than attempting the nearly impossible task of naming each digital location where evidence of child pornography or user attribution was likely to be found. Because the Device Warrant's authorization to search the "electronic or digital contents of . . . any other electronic

1  device and/or storage device belonging to Sean D. Sullivan" was supported by probable

2  cause and sufficiently particularized, the Device Warrant is not overbroad.[2]

3  **2.     Google Warrants**

4  Next, Sullivan challenges the Google Warrants. The Google Warrants authorized

5  the seizure of all "[p]rofile account information associated with Google email/username"

6  irishlord45@gmail.com and 4leafindustries@gmail.com, including subscriber

7  information, payment history, account recovery information, login history limited to a

8  two month period, "content of all Gmail email messages and Gmail/Google+

9  chats/Hangouts" limited to a two month period, "all images/videos stored in Google

10  Photos," including photos stored in the trash folder, bookmark history limited to a two

11  month period, "all Chrome browser history" limited to a two month period, "all searches"

12  limited to a two month period, "content of Google Drive and Google Keep files," and "all

13  Google location history and Google Maps 'Your Timeline' information," limited to a two

14  month period. Irishlord45 Affidavit at 11–12; 4leafindustries Affidavit at 11–12.

15  The Court concludes that the authorization of the above content was not overbroad

16  because the issuing judge appropriately concluded that evidence stored in Sullivan's

17

18  _____

[2] Sullivan also argues that Detective Robinson had a duty to return to and inform the magistrate judge of the results of the search of the Alcatel phone, which did not discover child pornography. Dkt. 51 at 13. "The duty to report new or correcting information to the magistrate does not arise unless the information is material to the magistrate's determination of probable cause." *United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir. 1984). Because the Alcatel phone was associated only with the "4leaflogging" account and saw "little" day-to-day use, the Court finds this information immaterial to the determination of probable cause supporting the Device Warrant. Google Affidavit at 8, 9.

Google accounts was likely to contain evidence of sex crimes against minors and/or

indicia of ownership over the accounts. As indicated above, the Court places great

significance on the fact that Jeffers observed the images in Sullivan's Google Photos,

which was closely integrated with other Google applications. As Detective Robinson

explained:

> Google Inc - . . . Google Inc offers numerous free and premium (paid services) to its users. Google services are offered under a unified login. **Meaning a google user needs only one user name and password to access all the Google Inc services.**
>
> gMail- A free web-based email client provided by Google Inc. www.gmail.com
>
> Google Photos-A iOS and Android operating system application for the management of images and videos. The application supports backup/sync/upload of images/videos on the device where Google Photos is in use. Google Photos also accepts user provided data to assist with facial recognition of subjects in uploaded images. **Any image/video backed up, synced, or uploaded resides on Google Inc servers and is accessible by any device logged on to the associated user account**. photos.goog1e.com
>
> Google Drive - A cross platform file storage service provided by Google Inc. This service provides storage of digital files of any type on Google Inc servers. **This service is tightly integrated with Google Photos and gMail. Files stored by the Google Drive service are accessible by any device logged on the associated user account.** drive.google.com

Irishlord45 Affidavit at 3; 4leafindustries Affidavit at 3. Integration between the different

services available under a unified Google account provides a nexus between Sullivan's

Google photos and the other information stored on Google, Inc's servers. For example,

Detective Robinson explained later in the affidavits supporting the Google Warrants that,

based on his training and experience, "when a subject has a Google account they are also

automatically enrolled in numerous other Google Inc services, including gMail, Google

Drive, Google Photos, and Google Hangouts among others." Irishlord45 Affidavit at 4;

4leafindustries Affidavit at 4. Analysis of the Alcatel phone showed integration with the "4leafindustries" account, while analysis of the Moto G4 demonstrated integration with both Google accounts. This analysis, along with the fact that Jeffers discovered the offending images inside the Google Photos application linked to Sullivan's "irishlord45" Google account, contributed to the issuing judge's reasonable inference that evidence relevant to the investigation of child pornography would likely be found in Sullivan's Google accounts. The Google Warrants were therefore not overbroad.

### 3. Blue LG Warrant

The Blue LG Warrant authorized the search of "the electronic and digital contents of the mobile device belonging to Sean D Sullivan." Blue LG Warrant at 10. The Blue LG Warrant also included examples of categories of information to be seized, such as video images, passwords, and encrypted files, set off by a "to include." *Id.* Like the Device Warrant, Sullivan contends the Blue LG Warrant is overbroad because it authorized the search and seizure of the entirety of the blue LG phone's contents. Dkt. 51.

The affidavit supporting the Blue LG Warrant detailed how employees of a drug treatment center viewed suspected child pornography on a cell phone hidden under Sullivan's mattress. A search of the contents of the phone was therefore necessary to determine both the circumstances under which the suspected pornography was downloaded to the phone and the attributes of the user, which in turn provided probable cause to search beyond the mere images of suspected pornography themselves. Because analysis of the probable cause supporting the Blue LG Warrant is substantially similar to the probable cause analysis of the Device Warrant above, the Court reaches the same

conclusions that the factual context of this case supported the issuance of a warrant authorizing the search of the electronic and digital contents of Sullivan's devices, including the blue LG phone. The Blue LG Warrant was therefore not overbroad.

### 4.     Nexus to Google Warrant

Sullivan also argues that "the fruits of the [Device] Warrant must be stricken from the affidavit, leaving no nexus to the Google Account." Dkt. 51 at 17. To justify the search of a particular place there must be a "reasonable nexus" between the location to be searched and the evidence sought. *Chavez-Miranda,* 306 F.3d at 978. Before reaching the merits of this argument, the Court notes that Sullivan's counsel concedes making a factual error in her statement that, with the fruits of the Moto G4 search excised from the Google affidavits, "there was no indication that [Sullivan] used any other Google services, that he stored photos in Google, or that any of the other items sought in the warrant would exist at Google." Dkt. 62 at 3. Counsel also concedes that this error "has some effect on the question of nexus." *Id.* at 4.

As explained above, Jeffers located alleged pornographic images of MV1 in Sullivan's Google Photos. Device Warrant at 6. Jeffers also identified Sullivan's Google email address as irishlord45@gmail.com. *Id.* at 9. There was therefore a reasonable nexus between the evidence of child pornography offenses sought and Google, Inc, even if the Device Warrant were found overbroad in its authorization to search the entirety of Sullivan's electronic devices.

Moreover, the facts linking the evidence sought to Google were learned independently from Jeffers prior to the authorization of the Device Warrant, meaning the

nexus between the alleged offenses and Sullivan's Google account did not rely on the contents of the Moto G4 search performed pursuant to the Device Warrant. "The independent source exception to the exclusionary rule allows information that is received through an illegal source to be considered cleanly obtained when it arrives through an independent source." *United States v. Heckencamp*, 482 F.3d 1142, 1149 (9th Cir. 2007) (*citing Murray v. United States*, 487 U.S. 533, 538–39 (1988)). There was therefore sufficient justification to issue the Google Warrant based on Jeffers's independent information.

Because the Court concludes that the scope of each warrant issued in this case was supported by probable cause, and because there was a sufficient nexus to the evidence sought in the Irishlord45 Google account, Sullivan's motion to suppress is denied.

**B.      Motion for *Franks* Hearing**

Sullivan's motion is based on his identification of four allegedly material omissions from the affidavits supporting the Device and Google warrants, negating each warrants' facial showing of probable cause. Dkt. 52. Sullivan does not allege that Detective Robinson inserted false statements into any affidavit or search warrant application. *Id.* Regarding the omissions, Sullivan explains that "[t]wo of the omissions involved the [Device Warrant]; both of those, along with the two others, involved the Google [Irishlord45] warrant." Dkt 65 at 1.[3]

---

[3] The motion for *Franks* hearing challenges only the Device and Google "Irishlord" Warrants; therefore, the Court's use of "warrants" in this section refers only to these warrants.

In *Franks*, the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment . . . requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 156. *Franks* applies to omissions as well as false statements. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) *amended on other grounds by* 769 F.2d 1410 (9th Cir. 1985). At the pleading stage, clear proof of deliberate or reckless omission is not required. *United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). However, the alleged falsity or omission must be material to the determination of probable cause. *Chavez-Miranda*, 306 F.3d at 979. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72. Accordingly, where a defendant alleges material omissions by law enforcement, "the pivotal question is whether an affidavit containing the omitted material would have provided a basis for a finding of probable cause." *Chavez-Miranda*, 306 F.3d at 979.

In this case, Sullivan identifies four omissions in Detective Robinson's two warrant affidavits that he alleges were material to the issuing judge's determination of probable cause. Dkt. 52 at 2–5. That is, that Detective Robinson omitted from the Device Affidavit (1) results of a physical examination performed on MV1 on July 24, 2017 and (2) a delay in reporting by Jeffers; as well as omitting from the Google Affidavit (3)

Jeffers' criminal history and history of prior unfounded allegations and (4) results of a forensic interview of MV1 performed on July 25, 2017. *Id.* Upon review of the Device Affidavit and the Google Affidavit, the Court concludes that Sullivan fails to make a substantial preliminary showing that any alleged omission was material to the determination of probable cause, and therefore is not entitled to a hearing. The Court examines each alleged omission in turn.

### 1. Preliminary Physical Examination of MV1 on July 24, 2017

It is undisputed that Detective Robinson omitted the following excerpt taken from a report by Cowlitz County Sheriff's Deputy Pattison from both affidavits:

> I [Officer Pattison] asked if a sexual assault kit was going to be done and I was advised they don't do them at this hospital. A doctor got on the phone and said they would refer [MV1] to a different facility to have the exam done within the next day or two. The doctor also told me that there didn't appear to be any signs of sexual assault when they did a brief exam on [MV1].

Dkt. 44-3 at 2; Device Warrant at 6; Google Warrant at 5. The affidavits included quoted material from Deputy Pattinson's report occurring just before and just after this excerpt. *Compare* Dkt. 44-3 *with* Device Warrant at 6, *and* Google Warrant at 5. Moreover, Detective Robinson used ellipses in the affidavits to indicate that the quoted material he did include from Deputy Pattinson's report was part of an incomplete quotation. Device Affidavit at 6; Google Affidavit at 5. Sullivan has therefore made a substantial showing that Detective Robinson intentionally omitted the results of MV1's July 24, 2017 physical exam—that no physical sign of sexual assault was found— from the two affidavits.

However, Sullivan fails to show that this omission was material. Under the second *Franks* prong, Sullivan must also demonstrate that "the affidavit purged of its falsities [or supplemented by the omissions] would not be sufficient to support a finding of probable cause." *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (citing *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980)). Viewing the totality of the circumstances set forth in the affidavit, a finding of probable cause is appropriate when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

Here, the Court agrees with the Government that the absence of physical "signs of sexual assault" establishes only that a penetrative sexual assault is inconclusive. *See* Dkt. 57 at 8 (explaining that victims in "at least 95% of proven cases of sexual abuse, including those involving penetration, have normal subsequent physical exams."). Therefore, the omission of this detail is immaterial to the determination of whether depictions of minors engaged in sexually explicit conduct would likely be found on Sullivan's electronic devices. *See* Device Warrant at 14 (authorizing the search for evidence of "RCW 9.68A.070 possession of depictions of minor engaged in sexually explicit conduct."). While certainly a detail relevant to Sullivan's defense, the fact that a brief, preliminary exam by an unidentified medical provider failed to show "signs of sexual assault" does not tend to prove or disprove Jeffers's report of seeing pornographic images of MV1 on Sullivan's phone. Notably, Jeffers did not allege seeing penetration of MV1 in the images she reported viewing. Further, both affidavits represented the fact of Sullivan's recent proximity to MV1, Jeffers's viewing of nude images of MV1 on

Sullivan's phone, including two images with Sullivan's erect penis next to MV1's vagina, and Sullivan's alleged termination from a position as a police officer due to inappropriate behavior with a 10-year-old female minor. Device Affidavit at 5; Google Affidavit at 6. Based on these facts, there was a "fair probability" that evidence of a child pornography crime would be found upon a search of Sullivan's electronic devices, even if Detective Robinson had included the omitted information about the first physical exam in the Device Affidavit. That the Google Affidavit issued on August 1 also supported a finding of probable cause is a foregone conclusion. In addition to the information contained in the Device Affidavit, the Google Affidavit contained Sullivan's admission to looking at nudist images, including images of naked children, Google Affidavit at 8, and results from a forensic analysis of the Moto G4 phone seized during Sullivan's arrest on July 26, 2017, which further demonstrated Sullivan's interest in sexualized depictions of minors, *id.* at 9–10, all establishing probable cause of a violation of RCW 9.68A.070. Because an affidavit containing the results of the preliminary physical exam still would have provided a basis for a finding of probable cause of a child pornography or child exploitation crime, the omission of the preliminary physical exam is immaterial. *Chavez-Miranda*, 306 F.3d at 979.

### 2.    Jeffers's Delayed Reporting

Regarding delay in Jeffer's reporting, Sullivan fails to show that any such delay occurred. Thus, Sullivan fails to make a sufficient showing under either *Franks* prong. Here, Sullivan contends that "the affiant knew, but omitted, the fact that Jeffers first said she would contact Officer Pattinson when she returned home, to provide a written

statement" from both affidavits. Dkt. 52 at 3. While technically true, the Court finds this allegation is mischaracterized as an omission. Jeffers took MV1 to the hospital during the evening on July 24, 2017, where she provided a telephonic statement to Deputy Pattinson over the phone around 8:22 P.M. Dkt. 56-4. The next day, July 25, 2017, Jeffers spoke again with law enforcement telephonically, Device Affidavit at 8, and provided a written statement, Dkt. 56-1. Jeffers therefore reported the allegations to the police on the same day that she sought medical attention for MV1. The "delay" Sullivan complains of refers to the fact that Jeffers did not provide a written report until July 25, 2017. Dkt. 52 at 3. That Jeffers waited one day to provide a written account of the allegations after verbally reporting them to law enforcement on July 24, 2017 does not indicate a delay in reporting.[4] Moreover, even assuming a delay, the warrant would have issued under the probable cause analysis above had Detective Robinson included the fact that Jeffers did not give a written statement until July 25 in the Device Affidavit. Therefore, this omission, if it could even be considered an omission, is immaterial.

### 3. Jeffers' Criminal History and History of Prior Unfounded Allegations

Next, Sullivan contends that Detective Robinson intentionally omitted from the Google Affidavit the fact Jeffers was on house arrest and that Detective Robinson was "reckless" in not investigating the house arrest further, because it would have revealed Jeffers' conviction for methamphetamine possession and her status as a probationer. Dkt.

---

[4] Sullivan asserts there is a "strong argument" that Jeffers might not have reported the incident to police at all because the initial 911 call came from a hospital nurse who was a mandatory reporter of child abuse. Dkt. 65 at 4. This argument relies on pure speculation and therefore will not be evaluated by the Court.

52 at 4. The Government counters that "Sullivan seems to advocate a rule that would deem all statements of those with a history of drug use as inherently suspect," noting that "those who have used narcotic drugs or have a criminal conviction (and their children) . . . are not inherently incredible when they report crimes." Dkt. 56 at 9. The "veracity" and "basis of knowledge" of persons supplying hearsay information relied on in a warrant affidavit is relevant to the determination of probable cause. *Gates*, 462 U.S. at 238. The parties thus dispute the extent of law enforcement's duty to investigate the credibility of a reporting witness before preparing an affidavit for a search warrant.

Here, Sullivan asserts the fact that Jeffers was on house arrest during the summer of 2017 should have led Detective Robinson to further investigate her conviction for possession of methamphetamine and/or the fact of her supervision by the Department of Corrections, which would have led to the discovery that in the police report responsive to the possession conviction, Jeffers reportedly accused another individual of placing the methamphetamine in her purse, which bears on her credibility. Noting the attenuation of this link, the Court agrees with the Government that law enforcement was not required to further investigate Jeffers's credibility relating to her methamphetamine conviction absent some indication that Jeffers's ability to perceive and remember events was affected. Here, the deputy who spoke to Jeffers on July 25 reported that he saw no indication that Jeffers's "statements about what she saw on Sean Sullivan's phone were the product of hallucination or otherwise affected by addiction to or use of alcohol or narcotic drugs." Dkt. 56-2 at 3. Law enforcement therefore had no reason to suspect that Jeffers was under the influence of substances that would alter her ability to perceive or

report events, meaning their failure to investigate Jeffers's credibility further does not rise to reckless disregard of the truth. *See United States v. Miller*, 753 F.2d 1475, 1478 (9th Cir. 1985) ("It might have been prudent for the federal agents to check on [an informant's] background and criminal record, but their failure to do so is not reckless disregard."). Moreover, while it is true that Jeffers's credibility is central to this case, Jeffers was not serving as a confidential informant, motivated by reward money, or serving some other interest with obvious effect on her motivations. Rather, Detective Robinson was presented with a report from a mother who had taken her child to the hospital based on a fear the child had been assaulted, who provided two telephonic statements and one written statement that were materially consistent, and who allowed the child to undergo a forensic examination. By the time Detective Robison prepared the Google Warrant, the search of the Moto G4, as well as Sullivan's July 26 admission, further corroborated Jeffers's report. Detective Robinson therefore had no obligation to undertake an exhaustive search for reasons to undermine Jeffers's account simply because she, like Sullivan, had criminal history and was alleged to use illegal drugs.

Sullivan's second argument here, that Detective Robinson materially omitted the fact that Jeffers reported that her minor relative may have molested MV1 in 2013, from which no criminal charges were filed, fails upon review of the precise allegation. *See* Dkt. 44–5. First, the Court notes that an investigator's determination that "there is insufficient evidence to prove any type of crime" does not establish the falsity of a reported occurrence of child molestation, especially where the police report from the incident indicates that Jeffers consistently denied that she had seen her minor relative's

hand touch MV1's genitals. *Id.* at 3, 4, 7. Second, Sullivan fails to demonstrate that, had

this information about an unrelated allegation against an unrelated individual been

included in the affidavit, it would have changed the issuing judge's determination of

probable cause. The Court concludes that had Detective Robinson included all of

Sullivan's alleged omissions in this category— Jeffers' supervision, her

methamphetamine conviction, and the prior report of child abuse in 2013—the Google

Warrant would have issued because the affidavit supporting the Google Warrant would

still demonstrate a fair probability of a violation of RCW 9.68A.070. Third, the Court

could not entertain making a ruling casting a parent's prior unrelated report of suspected

child abuse when no false statements were made as material to the parent's credibility

when he or she reports a new occurrence of suspected abuse, years later. Such a ruling

could discourage reports of child abuse, especially where the decision to investigate and

ultimately bring charges is made by authorities and not the parent. Sullivan therefore fails

to make a sufficient showing under either *Franks* prong regarding Jeffers' criminal

history and/or history of making allegedly false allegations.

### 4. Forensic Interview of MV1 on July 25, 2017

Finally, Sullivan contends that Detective Robinson intentionally withheld from the

Google Affidavit additional details from the forensic interview conducted on July 25,

2017, including MV1's report that "nobody has touched her private parts." Dkt. 52 at 4.

The report of the forensic interview also indicates that MV1 disclosed that nobody had

taken photos of her without her clothes on. Dkt. 57. The Government argues that the

Google Affidavit did state this information—that MV1 made "no specific disclosures" at

the forensic interview—and therefore this information was neither omitted nor

misleading. Dkt. 56 at 13–14.

Here, the Court concludes that a district court reviewing a warrant affidavit would

have liked to have known that the alleged child victim denied that anyone had taken nude

photos of her. *See Demassa v. Nunez*, 747 F.2d 1283, 1293 (9th Cir. 1984), *on rehearing*,

770 F.2d 1505 (1985). However, Detective Robinson included the fact that MV1 made

"no specific disclosures" against Sullivan. This fact sufficiently advised the magistrate

judge of the most material information learned at the interview—i.e., the essential fact

that there was no corroboration of the suspect's alleged abuse by the young child victim.

Moreover, the Court does not find Detective Robinson's omission of the more

specific language used by MV1 at the interview to be misleading. In *Stanert*, the Ninth

Circuit examined omissions that allowed technically true statements in an affidavit to

purposefully mislead the reviewing judge, finding that the affiant in that case had

"misrepresented the earlier explosion at Stanert's residence by failing to tell the judge

that Stanert purchased and moved onto the property *after* the explosion." 762 F.2d at 781.

In *Chesher*, the defendant asserted that anyone with the affiant's claimed extensive

knowledge of the membership of the Hells Angel's Motorcycle Club would have known

that the defendant had been expelled from the club years earlier. 678 F.2d at 1360–61.

Reversing for an evidentiary hearing, the court found that "[t]he use of information this

out of date as a basis for an expression of [affiant's] current belief tends to support a

claim of recklessness." *Id.* at 1361. Conversely, here Detective Robinson's omission of

MV1's specific exculpatory statements was not coupled with any other technically true

statement that together would have misled the reviewing judge into believing MV1 *had* disclosed abuse. Nor did the omission of the specific statements demonstrate a reckless disregard for the truth because the fact that MV1 made "no specific disclosures" is true. Rather, Detective Robinson included the type of information courts reviewing warrants for child abuse consider—whether the alleged victim has disclosed against the suspect offender—albeit briefly. Sullivan has therefore failed to make a showing that the Google Warrant contained an intentional or reckless omission about the forensic interview designed to mislead a reviewing court.

Even if the Court is wrong regarding Sullivan's ability to show an intentional or reckless omission, Sullivan fails to show materiality. Because the Google affidavit included the fact that MV1 failed to corroborate any allegation specific to Sullivan, the Court is satisfied that probable cause would still be found had additional information about MV1's specific denials been included in the affidavit or reported to the magistrate judge prior to the search of the Moto G4.

MV1's exculpatory statements at the forensic interview are immaterial for a second reason. In the written statement Jeffers provided on July 25, 2017, she indicated that in the second set of images of MV1 that she saw on Sullivan's phone, "my daughter was sleeping and he had his dick next to my daughter's lil [*sic*] girl parts." Dkt. 56-1 at 2. In light of this detail, Detective Robinson's failure to disclose five-year-old MV1's report that "all" she had done with Sullivan's phone was "watch movies and play[]" was a failure to disclose information that was inconclusive at best, and exculpatory at worst. Dkt. 65-1 at 18. Regardless, had Detective Robinson included MV1's specific statements,

the warrant would have issued because the images Jeffers reported viewing provided the issuing judge with probable cause that evidence of child pornography would likely be found on Sullivan's electronic devices. This conclusion is not negated by MV1's exculpatory statements, because Jeffers reported that MV1 was asleep in some of the images. Therefore, this omission was immaterial.

In sum, the Court concludes that a *Franks* hearing is unnecessary because Sullivan fails to make a substantial showing that the affiant in any of the warrants issued in this case intentionally or recklessly omitted material information that would have changed the reviewing judge's determination of probable cause. Even if the Court considers all of the alleged omissions cumulatively, both the Device Warrant and the Google Warrant still demonstrate a fair probability that evidence of a violation of RCW 9.68A.070, possession of depictions of minors engaged in sexually explicit conduct, would be found on Sullivan's electronic devices. [5]

**C.    Remaining Motions**

Upon review of the parties' motions to seal, the Court finds that each seeks to protect sensitive information related to the witnesses in this case, and therefore the Court finds good cause to grant each motion.

Upon review of the parties' motions to file overlength responses and replies, the Court agrees that the fact-bound nature of this case necessitated the filing of pleadings

---

[5] Sullivan notes, and the Court observes, the Government's use of the more permissive language "could" throughout its response. The Court acknowledges that "fair probability" is the correct standard for a probable cause determination. *See Gates*, 462 U.S. at 238

longer than the page limits proscribed by the local court rules, and therefore the Court grants each motion.

### IV.  ORDER

Therefore, it is hereby **ORDERED** that Sullivan's motions to suppress, Dkt. 51, and for a *Franks* hearing, Dkt. 52, are **DENIED**.

The Government's motions for leave to file overlength responses, Dkts. 54, 58, are **GRANTED**. The Government's motion to seal document exhibit 3, Dkt. 55, is **GRANTED**.

Sullivan's motion for leave to file an overlength reply, Dkt. 63, is **GRANTED**. Sullivan's motion to seal his reply to the *Franks* motion, Dkt. 64, is **GRANTED**.

Dated this 7th day of May, 2019.

BENJAMIN H. SETTLE
United States District Judge